J. WILSON NANCE, APPELLANT, v. AMES PLAZA, INC., ET AL., APPELLEES.

131 N. W. 2d 569

Filed December 4, 1964. No. 35603.

Eisenstatt, Lay, Higgins & Miller, for appellant.

Kennedy, Holland, DeLacy & Svoboda, David A. Svoboda, and Stoehr, Rickerson, Sodoro & Caporale, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J., SPENCER and BOSLAUGH, JJ., dissenting.

We respectfully dissent on the action of the court in overruling the motion for rehearing. We are of the opinion that reargument should have been granted in this case.

Plaintiff sustained injuries when he slipped and fell on an icy sidewalk at the Ames Plaza, a shopping center in Omaha, Nebraska, owned by the defendant. The trial court directed a verdict at the close of the plaintiff's evidence, so the only question presented is the legal effect of the undisputed evidence in the case adduced by the plaintiff. The problem in the case is the determining of what reasonable inferences can be drawn and be adduced from the plaintiff's evidence. The evi-

dence shows that the accident happened shortly after noon on December 20, 1961. The plaintiff was a drug salesman employed by the Pitman-Moore Company. He had arrived at the Ames Plaza at about 12:15 p.m. He had parked his car on the east side of an office building described as building "B." He went from his car to a restaurant in a bowling alley which is located directly north of building "B." After the plaintiff had finished his lunch he left the bowling alley by the main entrance and walked directly south toward building "B." In doing so he crossed a sidewalk on the south side of the bowling alley and a parking area between the bowling alley and building "B" and arrived at a sidewalk which is along the north side of building "B." The sidewalk adjacent to the bowling alley was clear. The parking area between the sidewalks was covered with packed snow and ice. The sidewalk adjacent to building "B" is approximately 8 feet wide. There is a curb at the edge of the parking area which is 6 inches high. There was a small ridge of snow along the curb at the edge of the parking area.

The plaintiff testified: "Q. Well, as you went on across the way, just describe your motion and what you observed and what happened. A. As I approached the sidewalk I looked at it. Because of the slope in the street there, I wanted to go to the sidewalk to go up because it appeared to be clear; the street was packed and could be dangerous to walk on, and so as I approached the sidewalk I observed it, it was cleaned off from where I could see it. Q. What color was it, Mr. Nance? A. Light-colored concrete. Q. Now, in passing onto the sidewalk area, do you recall what foot you stepped onto the area with? A. I stepped over the ridge of snow with my right foot and placed it on the sidewalk. Q. And in going over this ridge of snow that you mentioned, did you step in that or over it? A. I stepped over it. Q. And did you have any difficulty getting over it or maneuvering over it? A. No. Q.

Well, describe the step that you would take to go over it so that we can understand your movement as you go onto the sidewalk. A. Well, I had to raise my right foot higher than you would in a normal step to clear the snow. I had on oxford rubbers instead of the four-bucklers, so I didn't want to wade through the ridge; I stepped over it. Q. All right, and you come down on your right foot; is that correct? A. That's right. Q. Did you come down on the sidewalk area? A. You mean did I put my foot on the sidewalk area? Q. Yes. A. Yes. Q. And that is your right foot? A. That's right. Q. Tell us what happened when you did that. A. My right foot didn't stop, it sailed on out onto the sidewalk. Q. And what happened to you? A. I had—I mean, as I put my right foot down, I was pushing with my left foot to raise it up over the snow then, and my right foot went out and I fell down with my hands behind me and caught myself; a severe twist as I went. As the right foot went out, I tried to get my left foot under me and twisted and fell on my hands. Q. Where did you end up in the sidewalk area? A. My hands were on the sidewalk, my feet were extended over towards the building." The plaintiff further testified that after he had slipped and fallen he saw that there was a "thin glaze of ice" on the sidewalk; that he had not noticed the glaze prior to the time that he stepped on it; and that the glaze extended over a considerable area of the sidewalk and extended from a point 10, 15, or 20 feet west of where he fell to near the entrance to the building "B" on the north side of the building near the east wall.

At the time the plaintiff fell he was on his way from the bowling alley to his automobile for the purpose of obtaining his sample case. He then intended to call at the office of Dr. Minthorn which was located in building "B."

In our previous opinion on this matter we held as follows: "In truth it may not be said with any degree of certainty where the location of the area on the sidewalk

on which the plaintiff fell is, or even the location of the particular sidewalk."

The plaintiff testified that as he was walking south from the bowling alley toward building "B" he walked directly to a sign on the wall of building "B." The sign is shown in exhibits Nos. 4, 15, and 16 which are photographs of the north side of building "B." When these exhibits are given proper consideration, the location of the area on the sidewalk on which the plaintiff fell is shown with reasonable certainty. The inference is clear from this testimony that the plaintiff fell on the sidewalk that was immediately in front of the sign on the wall of building "B."

The plaintiff alleged that the defendant knew or should have known of the icy condition of the sidewalk at the location where the plaintiff slipped and fell. In our previous opinion in this case we called attention to the testimony of Helen Rigdon, an employee of Dr. Murray F. Minthorn, the customer on whom the plaintiff proposed to call on the premises of the defendant. In our previous opinion we found that the location of the ice upon which the plaintiff slipped was not more clearly placed than being on the sidewalk outside of Dr. Minthorn's office as this employee, Helen Rigdon, was going to her car. We will briefly review the testimony both with relation to the location of the ice upon which this witness slipped and her testimony as to her notification to the employee of the defendant who was in charge of the maintenance of this sidewalk. Mrs. Rigdon testified that she had slipped on some ice on the sidewalk outside of Dr. Minthorn's office between 5:30 and 6 p.m., on December 19, 1961; that she was going out to her car which was parked on the north side of the building about four cars from the entrance; that the condition of the sidewalk was "very icy"; that "there was snow and ice packed on it"; and that there was no sand or rock, salt, or ice remover on top of the sidewalk.

Mrs. Rigdon further testified that on the morning of

December 20, 1961, before she went to work, she went to the bowling alley at about 8:30 a.m. to get a cup of coffee and that at that time she had a conversation with Roland Waite.

The managing agent of the defendant testified that Waite assisted in the management of the shopping center and that his duties included the general maintenance of the structure as well as the maintenance of the common area; that his duties with respect to the common area of the sidewalk north of the building were to "keep the area clear of snow, or debris, or whatever the case may be"; that, concerning ice, it was part of his duties to clear it of ice or to put something on it; and that the defendant had something that could be applied to ice to make it safe for walking.

Mrs. Rigdon testified that she told Waite that "he had better get something on that ice, that I had slipped on it the night before"; that "he should do something about the ice on that sidewalk before someone really fell, that I had slipped on it myself"; and that Waite replied, "All right."

With respect to the location of the place where she had slipped on the ice, Mrs. Rigdon testified: "Q. And where, exactly, did you slip on the ice, Mrs. Rigdon? A. It was right in front of the building there about the fourth car down the sidewalk. Q. Well, when you say 'right in front of the building' had you just left the north entranceway of what they described as Building B? A. Yes, sir. Q. That is the building you are located in? A. Yes, sir. Q. And what did you do at that time, turn to the west? A. Yes, sir, I did. Q. And were you walking along the sidewalk adjacent to the Building B then? A. Right. Q. And you slipped on that sidewalk then at that time? A. Yes, sir. Q. About four car fronts down from the doors, is that your testimony? A. Yes, sir."

With respect to her conversation with Waite, Mrs. Rigdon testified: "Q. Had you encountered Mr. Waite

before in the bowling alley or at the Plaza? A. I had seen him that morning at the bowling alley and told him that I had slipped on there and that was a sheet of ice on the sidewalk. * * * Q. And on that morning did you see Roland Waite? A. Yes, I did. I saw him in the bowling alley and told him that he had better put something on the ice, that I had slipped on it the night before. Q. You had a conversation with him about the condition of the ice? A. Yes, I did. Q. What was the conversation again, Mrs. Rigdon? A. I told him that he should do something about the ice on that sidewalk before someone really fell, that I had slipped on it myself. * * * Q. What did you say to him, Mrs. Rigdon? A. I told him he had better get something on that ice, that I had slipped on it the night before. Q. And what ice were you referring to? A. The ice on the north sidewalk. * * * Q. That is by Dr. Minthorn's office? A. Yes."

It seems to us that the evidence shows with reasonable certainty the location of the area where Mrs. Rigdon slipped on a "sheet of ice" the night before the plaintiff fell; that the place where Mrs. Rigdon slipped was near the place where the plaintiff fell; that her statements to Waite were sufficient to notify him that an icy condition existed on the sidewalk along the north side of building "B" at the place where the plaintiff fell; and that the location where the plaintiff fell was on a sidewalk maintained by the defendant and recognized by the defendant itself as an area that was maintained and should have been maintained for the safe passage of customers on the premises.

In our previous opinion, we held that there was no evidence that there was anything to indicate that the point where the plaintiff stepped onto the sidewalk was a proper place for him to enter upon it. The evidence shows that the sidewalk and the parking area were adjacent to each other in the shopping center. They were placed that way so that persons using the parking area could step from the parking area onto the sidewalk at

any point. We cannot see where there is any evidence to show that the plaintiff stepped onto the sidewalk in crossing this parking area at a place that was not intended by the owners and by the defendant to be used as such. We think that the jury could find from the evidence that in this commercial shopping center, with the parking areas and sidewalks immediately adjacent to each other, that the defendant intended that the plaintiff could enter the sidewalk from any point in the parking area where it was convenient for him to do so. The situation is not analogous to a public street with parallel sidewalks, in which the entranceways are designated by the public authorities through defined crosswalks, etc., and pedestrian traffic is not permitted in between.

Further, if the defendant owed the duty to maintain the area, where the plaintiff slipped, in a safe and proper condition, we fail to see where the point of his entrance would have any relation to the proximate cause of the accident.

We feel the evidence, therefore, is to the effect, construed in the most favorable light to the plaintiff, that the plaintiff was properly using the sidewalk at the time and place in question, that what he slipped on was not a natural accumulation of ice and snow which was open and obvious and therefore not actionable, but rather a thin coat of transparent ice which the jury could find was not apparent to a person exercising ordinary care under the circumstances. There is direct evidence that prior to the accident the defendant had been warned that there was a transparent coat of ice on the sidewalk. In our previous opinion, we called attention to the fact that in the testimony there was nothing which gave it that appearance (icy), and the ice thereon (in the location where the plaintiff fell) was not observable except on close inspection. This is a case where the defendant business inviter did not take proper precautions and safeguards to warn and protect its cus-

tomers from the transparent icy condition after it had been warned. We think that there was sufficient evidence for the jury to determine, under all the circumstances, that the defendant was negligent in the performance of its duty to maintain the premises in question for the safe passage of pedestrians using ordinary care under the circumstances.